UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

YOUNG MIN LEE, individually and on behalf of all
employees similarly situated,

Index No. 17-CV-09502

                Plaintiffs,

Judge: (NSR)

    -against-

NEW KANG SUH INC. d/b/a Korea Garden and
MYUNG SOOK CHOI,

                Defendants.

-------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

LANDMAN CORSI BALLAINE & FORD P.C.
*Attorneys for Defendants*
120 Broadway, 13th Floor
New York, New York 10271
(212) 238-4800

Of Counsel:
Sonali Setia, Esq.

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

LEGAL ARGUMENT .................................................................................................................. 4

POINT I
PLAINTIFF'S CLAIMS ARE BARRED BY THE
MUTUALLY AGREED UPON SETTLEMENT AGREEMENT
AND GENERAL RELEASE .......................................................................................................... 5

    A.    The Agreement was Clear and Unambiguous on its Face and
          Knowingly and Voluntarily Entered into by Both Parties ......................................... 5

    B.    Plaintiff's Alleged Intent Does Not Affect the Validity and
          Enforceability of the Agreement ................................................................................. 7

    C.    Plaintiff Did Not Enter into the Agreement as a Product of
          Fraud, Duress, or Undue Influence. ............................................................................ 8

    D.    Plaintiff has Ratified the Agreement by Not Promptly
          Repudiating the Agreement ....................................................................................... 11

POINT II
DEFENDANTS HAD NO OBLIGATION TO REPORT OR SEEK
APPROVAL OF THEIR SETTLEMENT AGREEMENT AND RELEASE
FROM THE DEPARTMENT OF LABOR, NOR ANY COURT ............................................... 12

CONCLUSION ........................................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)............................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................4

*Cheeks v. Freeport Pancake House, Inc.*,
    796 F.3d 199 (2015)......................................................................................................12, 13

*Colburn Family Foundation v. Chabad's Children of Chernobyl*,
    739 F. Supp. 2d 614 (S.D.N.Y. 2010).............................................................................9, 11

*Continental Airlines, Inc. v. Lelakis*,
    943 F. Supp. 300 (S.D.N.Y. 1996) ....................................................................................8, 9

*Difilippo v. Barclays Capital, Inc.*,
    552 F. Supp. 2d 417 (S.D.N.Y. 2008)..................................................................................13

*DiRose v. PK Mgmt. Corp.*,
    691 F.2d 628 (2d Cir. 1982)..................................................................................................11

*Dodge St., LLC v. Livecchi*,
    32 Fed. Appx. 607 (2d Cir.2002)....................................................................................11, 12

*DuFort v. Aetna Life Ins. Co.*,
    818 F. Supp. 578 (S.D.N.Y. 1993) ..................................................................................5, 11

*Fletcher v. Potter*,
    No. 02 CIV. 9385, 2004 WL 1167378 (S.D.N.Y. May 26, 2004)...........................................10

*Gaughan v. Rubenstein*,
    261 F.Supp.3d 390, 399-400 (S.D.N.Y. 2017) .................................................................12, 13

Hallock v. State
    64 N.Y.2d 224 (1984) ...........................................................................................................11

*Hummel v. AstraZeneca LP*,
    575 F. Supp. 2d 568 (S.D.N.Y. 2008).........................................................................5, 7, 8, 9

*Lewin Chevrolet-Geo-Oldsmobile Inc. v. Bender*,
    225 A.D.2d 916 (3d Dep't. 1996)..........................................................................................8

ii

*Lozowsky v. Planet Automall, Inc.,*
    No. 07-3684, 2009 WL 1910726 (E.D.N.Y. June 29, 2009) ................................................8, 9

*RJE Corp. v. Northville Indus. Corp.,*
    329 F.3d 310 (2d Cir. 2003) ......................................................................................................5

*Skluth v. United Merchants & Mfrs., Inc.,*
    163 A.D.2d 104 (1st Dep't 1990) ...........................................................................................10

*Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.*
    987 F. Supp. 2d 267 (E.D.N.Y. 2013) ......................................................................................5

**Statutes**

Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* ...........................................................................1

New York Labor Law § 650 *et seq.* ..................................................................................................1

**Other Authorities**

12 N.Y.C.R.R. § 146 .........................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1, 4, 13

Fed. R. Civ. P. 41 ............................................................................................................................12

Fed. R. Civ. P. 8(a)(2) ......................................................................................................................4

Fed. R. Civ. P. 41 ............................................................................................................................12

## PRELIMINARY STATEMENT

Defendants NEW KANG SUH d/b/a Korea Garden and MYUNG SOOK CHOI (collectively, "Defendants") move to dismiss Plaintiff YOUNG MIN LEE's First Amended Collective and Class Action Complaint (the "Amended Complaint") in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff commenced this action with the filing of a Summons and Complaint on or about December 4, 2017 on behalf of herself and others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.*; New York Labor Law ("NYLL") § 650 *et seq.*; and 12 N.Y.C.R.R. § 146. Defendants filed a Motion to Dismiss the initial Complaint on or about August 6, 2018. The Court granted Defendants' Motion to Dismiss on or about February 15, 2019, and provided Plaintiff with leave to amend her complaint. However, the Amended Complaint still fails to state a claim upon which relief may be granted.

More specifically, Plaintiff fails to state a legitimate cause of action against Defendants, as *prior* to the commencement of this action, Plaintiff willingly and knowingly entered into a private settlement agreement releasing Defendants of the very claims raised in the Amended Complaint. Contrary to Plaintiff's allegations, the confidential Settlement Agreement and General Release dated June 29, 2017 (the "Agreement") executed by the parties is valid and enforceable as it was knowingly and voluntarily entered into, and was not the product of duress, fraud or undue influence. For these reasons and the additional reasons set forth more fully below, Plaintiff's Amended Complaint should be dismissed in its entirety, as it fails to state a cause of action under the relevant state and federal laws.

## STATEMENT OF FACTS

On or about June 29, 2017, the parties herein, Plaintiff Young Min Lee and Defendant Myung Sook Choi, executed a Settlement Agreement and General Release (the "Agreement"), which, by its own terms, contemplated the release of Defendants from any and all claims concerning Plaintiff's hours worked, wages, overtime or violations of state or federal law in relation to Plaintiff's employment with New Kang Suh Inc. and Myung Sook Choi. *See* Agreement, annexed as Exhibit A to the Declaration of Sonali Setia, Esq., dated September 20, 2019 ("Setia Declaration"). The Agreement explicitly acknowledges the parties' desire to resolve and settle all claims related to Plaintiff's employment for the amount of $17,000. *See* Setia Decl., Ex. A (Agreement). The Agreement further states that Plaintiff fully understands the terms within the Agreement and voluntarily entered into same. *See id.*

Nevertheless, on December 4, 2017, in direct breach of the Agreement, Plaintiff commenced the instant action through the filing of a Collective and Class Action Complaint (and thereafter, the filing of the Amended Complaint). According to the allegations contained in the Amended Complaint, New Kang Suh Inc. is a corporation that owns and operates a Korean restaurant in Westchester County, New York. Defendant Myung Sook Choi is alleged to be the owner, officer, director and/or managing agent of New Kang Suh Inc., and the maker of all business decisions relevant to salary and hours of work. *See* Setia Decl., Ex. F (Amended Complaint ¶¶ 1-6).

Plaintiff alleges she was employed as a waitress by New Kang Suh Inc. from 2001 to June 15, 2017. Amended Comp. ¶¶ 7, 11. Plaintiff further alleges that she worked from 10:30 A.M. until 10:30 P.M. on Mondays and Tuesdays; from 10:30 A.M. until 11:00 P.M. on Fridays and Saturdays; and from 10:30 A.M. until 10:00 P.M. on Sundays. Plaintiff did not work on

2

Wednesdays and Thursdays. Plaintiff additionally claims that she was never given an uninterrupted 30 minute break during her work hours and worked approximately 60.5 hours a week. *See* Amended Comp. ¶ 12. Plaintiff alleges that she was paid a daily flat rate of $55 per day regardless of her actual hours of work from 2001 through 2015, and a flat rate of $60 a day, regardless of her actual hours of work, from 2015 until June 15, 2017. Comp. ¶¶ 13-14.

Plaintiff alleges that she was not compensated for any overtime; never received "spread of hours" premium for shifts lasting longer than ten hours; was never provided any wage notices or notices regarding the terms and conditions of her employment, and that same is true for other class members. *See* Amended Comp. ¶¶ 15-23.

Plaintiff further alleges that she demanded $30,000 from Defendants after her termination, and that the agreed upon $17,000 received represented severance compensation, and not payment for any alleged unpaid wages. *See* Amended Comp. ¶¶ 25-28. Plaintiff also alleges that she "had little choice but to sign" the Agreement and did not have a proper interpreter present when she executed the Agreement and never consulted with an attorney regarding same. *See* Amended Comp. ¶¶ 27-29.

As addressed further below, Defendants deny the allegations and simply state that all the claims herein were settled between the parties prior to any contemplated litigation for the considerable payment of $17,000. Plaintiff is bound to the terms of the Agreement, which clearly released Defendants from all claims raised in the Amended Complaint. Additionally, contrary to Plaintiff's implications, she was not required to execute the Agreement or precluded from discussing it with anyone else prior to its execution. Moreover, Defendants were not obligated to seek approval for this pre-litigation settlement from either the Department of Labor or any court, as the claims were not brought before any court that could have jurisdiction over these parties

3

when the Agreement was signed. Plaintiff is accordingly precluded from bringing these claims and as such, the Amended Complaint must be dismissed in its entirety, and any attempt to cure the deficiencies is futile.

## **LEGAL ARGUMENT**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949 (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. To state a plausible claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not "shown" that the pleader is entitled to relief, and it must be dismissed. *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 557). To be plausible, the claim must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

4

## POINT I

## PLAINTIFF'S CLAIMS ARE BARRED BY THE MUTUALLY AGREED UPON SETTLEMENT AGREEMENT AND GENERAL RELEASE

A. The Agreement was Clear and Unambiguous on its Face and Knowingly and Voluntarily Entered into by Both Parties

Courts have ruled that a valid release, which is clear and unambiguous on its face and which is knowingly and voluntarily entered into, will be enforced as a private agreement between parties. *Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (citing *Skluth v. United Merchants & Mfrs., Inc.*, 163 A.D.2d 104, 282 (1st Dep't 1990) (citations and quotation marks omitted); *see also RJE Corp. v. Northville Indus. Corp.,* 329 F.3d 310, 314 (2d Cir. 2003); *DuFort v. Aetna Life Ins. Co.*, 818 F. Supp. 578, 581 (S.D.N.Y. 1993). "The terms of a contract are not ambiguous if they 'have a definite and precise meaning and are not reasonably susceptible to differing interpretations.'" *Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.* 987 F. Supp. 2d 267, 276 (E.D.N.Y. 2013) (quoting *RJE Corp,* 329 F.3d at 314). Additionally, "when the meaning of a contract is plain and clear, it is entitled to be enforced according to its terms and not to be subverted by straining to find an ambiguity which otherwise might not be thought to exist." *Vornado Realty Trust,* 987 F. Supp. 2d at 277 (quoting *Uribe v. Merchants Bank of N.Y.,* 91 N.Y.2d 336, 341 (1998)).

Here, a clear reading of the terms contained in the four corners of the Agreement makes it unmistakably evident that the intention of the current parties was to settle any and all claims Plaintiff could allege against Defendants in the context of her employment with them. Specifically, the Agreement states, in pertinent part:

> WHEREAS, Releasees [Defendants] wish to resolve and settle all claims related to hours of work, wages, and overtime that have been or could be asserted by Releasor [Plaintiff] in order to avoid the costs and

5

uncertainties of continued litigation, without any admission of liability or any infirmity in any claim or defense,

WHEREAS, the parties desire to resolve, on the terms set forth herein, any and all claims concerning hours worked, wages, overtime, and retaliation that were asserted or could have been asserted on behalf of Releasor [Plaintiff] . . . the parties agree that upon execution of this Settlement Agreement by Releasor [Plaintiff] and Releasees [Defendants], Releasees [Defendants] shall be dismissed from the Claim with prejudice, and Releasees [Defendants] shall have no further liability for any of the claims that have or could have been asserted, may or may be asserted, against them . . . Releasor [Plaintiff]. . . voluntarily, knowingly, irrevocably, and forever discharge Releasees [Defendants].

*See* Setia Decl., Ex. A (Agreement).

The Agreement further states, in pertinent part:

5. Releasor [Plaintiff]…voluntarily, knowingly, irrevocably and forever discharge Releasees [Defendants]…from any and all claims for any wage and hour violations under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, tips, gratuities, service charges, administrative or other mandatory charges, overtime pay, failure to maintain and furnish employees with proper wage records, claims to recover the tip credit, claims, meal break claims, uniform maintenance claims, uniform reimbursement claims, and all other claims that were or could have been asserted in the Claim, whether known or unknown, under federal, state, and/or local wage and hour laws, through the Effective Date of this Agreement

. . .

12. Releasor [Plaintiff] represents and agrees that she fully understands her right to discuss all aspects of this Settlement Agreement, that to the extent desired Releasor has availed herself of this right, that Releasor fully understands the provisions of this Settlement Agreement and that Releasor is voluntarily entering into this Settlement Agreement.

*See id.*

By the very terms Plaintiff agreed upon in exchange for the significant sum of $17,000, Plaintiff is precluded from bringing the instant action. By bringing this action, Plaintiff willfully

6

and maliciously violated the clear and unambiguous terms of the wholly valid and enforceable private contract between herself and Defendants.

Notably, Plaintiff does not allege that she was deprived of the opportunity to retain counsel, or to review the Agreement. Plaintiff also does not allege that she requested additional time to review the Agreement or to retain an attorney, or that such requests were denied by Defendants. In fact, and as set forth in the Agreement, Plaintiff was provided with said opportunities, and any alleged failure on behalf of Plaintiff to take advantage of same should not render the Agreement unenforceable.

In light of the valid Agreement that unequivocally bars the Plaintiff from bringing the instant action, the terms of the Agreement should be honored and the Amended Complaint should, therefore, be dismissed.

   B.  Plaintiff's Alleged Intent Does Not Affect the Validity and
       Enforceability of the Agreement

Courts have held that the parties' alleged intent of the contract does not supersede the clear language of the contract. "[I]t is the express language of the release, not the parties' subsequently alleged intent, that controls, and where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed." *Hummel*, 575 F. Supp. 2d at 571 (quoting *Shklovskiy v. Khan*, 273 A.D.2d 371, 709 N.Y.S.2d 208, 209 (App. Div. 2d Dep't. 2000) (quotations omitted).

Here, Plaintiff now claims that she thought the $17,000 payment was offered as severance because her position was terminated (and that the payment did not include unpaid wages). *See* Amended Comp. ¶ 28. Plaintiff's subsequently alleged intent, however, does not and cannot control given that the Agreement specifically states she is releasing all claims relating to her employment including, *inter alia*, unpaid wages, and that she understands all terms of the

7

Agreement and is electing to enter into same. *See* Agreement ¶¶ 5, 12; *see also Lozowsky v. Planet Automall, Inc.*, No. 07-3684, 2009 WL 1910726, at *4 (E.D.N.Y. June 29, 2009) (quoting *Humble Oil & Refining Co. v. Jaybert Esso Service Station, Inc.*, 30 A.D.2d 952 (2d Dep't 1968) ("[t]he law does not relieve a person merely because he has failed to read a document which he has executed"))); *Continental Airlines, Inc. v. Lelakis*, 943 F. Supp. 300, 305 (S.D.N.Y. 1996) ("If the signer could read the instrument, not to have read it was gross negligence; if [s]he could not read it, not to procure it to be read was equally negligent") (quoting *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162-63 (1930))); *see Lewin Chevrolet-Geo-Oldsmobile Inc. v. Bender*, 225 A.D.2d 916 (3d Dep't. 1996) ("Where, as here, a written instrument contains terms different from those orally or otherwise represented, a person is presumed to have read the writing[,] … may not claim that he or she relied on the [oral] representations[,] … [and] is conclusively bound by the terms of the … contract even though she may not have read it"); *see also Lozowsky*, 2009 WL 1910726, at *5 (finding that the plaintiff's failure to review the agreements prior to execution, despite alleged language barrier issues, precludes him from claiming reliance on any representations made by the defendant that conflict with the terms of the contract).

By bringing this action, Plaintiff willfully and maliciously violated the terms of this otherwise wholly valid and enforceable Agreement between herself and Defendants. In light of the valid Agreement that unequivocally bars Plaintiff from bringing the instant action, the terms thereof should be honored and the Amended Complaint should be dismissed. *See id.*

C. Plaintiff Did Not Enter into the Agreement as a Product of Fraud, Duress, or Undue Influence.

Courts have ruled that releases are enforced when they are "clear and unambiguous on their face and … knowingly and voluntarily entered into and were not the product of fraud, duress, or undue influence." *Hummel*, 575 F. Supp. 2d at 570. "A plaintiff seeking to set aside a release bears

8

the burden to either demonstrate that the release does not apply to the plaintiff's claim or to establish an equitable basis to vitiate its effect." *Id.* (quoting *Hack v. United Capital Corp.*, 247 A.D.2d 300, 669 N.Y.S.2d 280, 282 (App. Div. 1st Dep't. 1998)) (citations and quotations omitted).

Here, Plaintiff does not allege that the Agreement was a product of fraud, undue influence or duress. Rather, Plaintiff merely alleges that she "only speaks and understands Korean, [and] did not have an interpreter present when she signed the Agreement," that she "had little choice but to sign" the Agreement given her financial status due to her recent termination, and that there was "an abuse of bargaining power" because she was unrepresented prior to having signed the Agreement. *See* Amended Comp. ¶¶ 27-30.

First, Plaintiff's alleged language barrier does not and should not render the Agreement unenforceable. *See Colburn Family Foundation v. Chabad's Children of Chernobyl*, 739 F. Supp. 2d 614, 620 (S.D.N.Y. 2010) (rejecting the plaintiff's argument that the settlement agreement was invalid because he was a native speaker of Hebrew and Yiddish, not English, and that he was not aware of basic litigation and legal rights of federal court litigants); *see Lozowsky*, 2009 WL 1910726, at *5 (finding that the plaintiff's claims that he is a "simple man" who is not fluent in English fails to demonstrate that there was any fraudulent inducement or undue influence with respect to the agreement entered in to between the parties); *see Continental Airlines*, 943 F. Supp. at 305 ("If the signer could read the instrument, not to have read it was gross negligence; if [s]he could not read it, not to procure it to be read was equally negligent") (quoting *Pimpinello*, 253 N.Y. at 162-63). Here, the parties had utilized a neutral Korean mediator in connection with the execution of the Agreement. And, even if this neutral third party was not present, Plaintiff still should have ensured that she understood the terms of the Agreement *before* signing it. *See id.* Not

9

surprisingly, Plaintiff does not allege that she ever requested that the Agreement be explained to her prior to signing it and that she was denied an explanation and/or the opportunity to consult with someone who could better explain it to her. (And, the obvious reason for this is that she was not denied such an opportunity.) Accordingly, Plaintiff's alleged language barrier should not render the Agreement unenforceable.

Second, Plaintiff's failure to consult with an attorney prior to having signed the Agreement also does not render the Agreement unenforceable. *See Skluth*, 163 A.D.2d at 107 (stating: "[t]here is, certainly, no requirement in the law that consultation with a lawyer must occur in order to render a contractual obligation enforceable . . . so long as the agreement has been knowingly and voluntarily entered into"). Importantly, neither Plaintiff nor Defendants were represented by counsel at the time the Agreement was entered into (as the parties had simply agreed to utilize a mutually agreed upon neutral Korean mediator to review the Agreement). *See Fletcher v. Potter*, No. 02 CIV. 9385, 2004 WL 1167378, at *6 (S.D.N.Y. May 26, 2004) (finding that the employee who was not represented by counsel in negotiating settlement "should not counsel against [enforcement of] the [s]ettlement [a]greement" where the employer was also unrepresented).

In any event, Plaintiff does not allege that she was deprived of the opportunity to retain counsel, or to review the Agreement with counsel. Likewise, Plaintiff also does not allege that she requested additional time to review the Agreement (with an attorney or anyone else for that matter), and that such requests were denied by Defendants. Indeed, the obvious reason for this is that she was not denied such an opportunity. In point of fact, the Agreement provides that Plaintiff was permitted to review and discuss the Agreement with an attorney before signing it. *See* Agreement at ¶ 12. As such, Plaintiff's failure to consult an attorney should not render the Agreement unenforceable.

10

Third, Plaintiff's contention that her financial situation (due to her recent termination) provided her with "little choice" but to execute the Agreement is also unavailing. *DuFort*, 818 F. Supp. at 582 ("A party raising duress must also do more than merely claim that the other party knew about and used his or her poor financial condition to obtain an advantage in contract negotiations") (citing *Kenneth D. Laub & Co. v. Domansky*, 172 A.D.2d 289 (1st Dep't. 1991)) (quotations omitted). As noted above, the negotiation leading to the $17,000 payment stemmed from Plaintiff's initial demand of $30,000; the Defendants did not initiate this discussion, nor did Defendants require the Agreement be signed immediately. As such, Plaintiff's alleged financial condition, without more, does not and cannot alter the enforceability of the Agreement. *See id.*

In sum, Plaintiff has not alleged any facts that amount to duress, fraud or undue influence and, therefore, the Agreement cannot and should not be rendered unenforceable.[1]

D.  <u>Plaintiff has Ratified the Agreement by Not Promptly Repudiating the Agreement</u>

Courts have found that delays in repudiating a contract, even in cases of alleged uneven bargaining power as a result of one party being unrepresented, constituted waiver. *Colburn*, 739 F.Supp.2d at 619-621 (stating: "[i]f the releasing party does not promptly repudiate the contract or release, [s]he will deemed to have ratified it") (quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001)); *see also DiRose v. PK Mgmt. Corp.*, 691 F.2d 628, 634 (2d Cir. 1982); *Dodge St., LLC v. Livecchi*, 32 Fed. Appx. 607, 609, 611 (2d Cir.2002) (discussing ratification by performance); *see also Hallock.v. State*, 64 N.Y.2d 224, 230 (1984) (upholding settlement despite the plaintiff's objection, which was raised more than two months after the settlement was executed).

---

[1] To the extent Plaintiff may be claiming fraud or fraudulent inducement based on her belief that the $17,000 payment constituted a severance payment, this contention would fail for the reasons set forth in Point I(B), *supra.*

11

Here, Plaintiff unquestionably failed to promptly repudiate the Agreement. Indeed, there was no mention of the Agreement in Plaintiff's initial Complaint filed on December 4, 2017. Rather, the first time the Plaintiff raised an objection to the Agreement was in her opposition to Defendants' initial motion to dismiss dated July 20, 2018, *i.e.*, more than one year after execution of the Agreement. According to established case law, Plaintiff has ratified the Agreement, and is barred from bringing this lawsuit. *See id.*

## POINT II

### DEFENDANTS HAD NO OBLIGATION TO REPORT OR SEEK APPROVAL OF THEIR SETTLEMENT AGREEMENT AND RELEASE FROM THE DEPARTMENT OF LABOR, NOR ANY COURT

The Second Circuit has determined that settlement agreements resolving FLSA claims are not binding unless either the Department of Labor or a district court has approved the agreement's terms. *See Cheeks v. Freeport Pancake House, Inc.* 796 F.3d 199 (2015). However, *Cheeks* only applies to settlement agreements that occur in the context of Rule 41 of the Federal Rules of Civil Procedure, and is accordingly inapplicable to settlements made prior to any litigation, as is the circumstance here. *See id.*; *Gaughan v. Rubenstein*, 261 F.Supp.3d 390, 399-400 (S.D.N.Y. 2017) (stating: '*Cheeks* does not apply …, because it was entered into before any litigation commenced and thus fall outside of the purview of Federal Rule of Civil Procedure 41, which is the subject of the Cheeks decision').

In *Gaughan v. Rubenstein*, the parties, prior to any litigation, entered into a settlement agreement for the payment of $18,000 to the plaintiff, in exchange for the release of any and all claims against the defendant in relation to her employment with him. There, the Court determined that precedent required that the Court uphold the settlement agreement and dismiss the action against the defendant. The Court explained:

12

[T]o hold otherwise, given the procedural and substantive indicia of fairness present here, would inhibit productive settlements. It would effectively require that any parties, even ably counseled plaintiffs, wishing to settle an FLSA dispute out-of-court without bringing suit, obtain judicial or agency approval for their settlement. The Court is unaware of no *[sic]* charter for imposing such a requirement. *Gaughan*, 261 F.Supp.3d at 402.

In light of the ruling in *Gaughan*, Plaintiff cannot claim that the Agreement is unenforceable due to a failure to get approval from the Department of Labor or a court. *Gaughan* clearly addresses the validity of pre-litigation settlements such as the one entered into by the parties in this action. Plaintiff is contractually barred from bringing the instant action, as her claims against Defendants are wholly and directly resolved.[2] And, Plaintiff cannot rely on *Cheeks* as a basis to elude dismissal. In sum, the allegations of the Amended Complaint are insufficient and must be dismissed, as her claims were resolved in June of 2017.

## CONCLUSION

Based upon the foregoing, Defendants' respectfully request that the Court grant Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Dated: New York, New York
        September 20, 2019

                                        Respectfully submitted,

                                        LANDMAN CORSI BALLAINE & FORD, P.C.

                                        _____
                                        Sonali Setia
                                        *Attorneys for Defendants*
                                        120 Broadway, 13th Floor
                                        New York, New York 10271
                                        (212) 238-4800

---

[2] At a minimum, the Court should dismiss Plaintiff's claims under the NYLL, as Plaintiff's execution of the Agreement, waiving her right to seek relief for, *inter alia*, unpaid wages under the NYLL is valid and enforceable. *See Difilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 426 (S.D.N.Y. 2008).

13

## AFFIDAVIT OF SERVICE BY REGULAR MAIL

STATE OF NEW YORK            )
                                       ) ss.:

COUNTY OF NASSAU            )

       **NNAMDI NNAJIOFOR,** being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at HAMILTON, NEW JERSEY.

       That on the 20th day of September, 2019, deponent served the within **NOTICE OF MOTION, DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

upon

                 Ken H. Maeng, Esq.
                 Hang & Associates, PLLC
                 *Attorneys for Plaintiff*
                 136-20 38th Avenue, Suite 10G
                 Flushing, New York 11354
                 (718) 353-8588

attorneys in this action, at the addresses designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States post office department within the State of New York.

                                            **NNAMDI NNAJIOFOR**

Sworn to before me this
20th day of September, 2019

_____
        Notary

                REBECCA W. EMBRY
           Notary Public, State of New York
                   No. 02EM6230737
              Qualified in Kings County
          Commission Expires March 11, 2023