UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YOUNG MIN LEE,

                              Plaintiff,

   -against-

NEW KANG SUH INC. and MYUNG SOOK CHOI,

                             Defendants.

No. 17-cv-9502 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

      Plaintiff Young Min Lee ("Plaintiff") brings this action against Defendants New Kang Suh Inc. and Myung Sook Choi (together, "Defendants"). ("Complaint," ECF No. 1.) Plaintiff asserts claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"). By Order dated February 15, 2019, the Court granted Defendants' motion to dismiss the Complaint and provided Plaintiff with leave to amend her claims. (ECF No. 23.) Plaintiff filed an Amended Complaint on March 18, 2019. (ECF No. 24.)

      Presently before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (ECF No. 27.) For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/11/2020

**BACKGROUND**

I.     **Factual Background**

The following facts are derived from the Amended Complaint or documents Plaintiff was aware of before she initiated this suit and are assumed to be true for the purposes of this motion.

From 2001 through her termination on June 15, 2017, Plaintiff worked for Defendants as a waitress in Yonkers, New York. (Am. Compl. (ECF No. 24) ¶ 11.) On June 16, 2017, Plaintiff contacted Defendants and demanded $30,000.00 as severance payment. (*Id.* ¶ 25.) Thereafter, Defendants contacted Plaintiff and offered $17,000.00 as severance payment. (*Id.*) Defendants instructed Plaintiff to pick up her severance payment on June 27, 2017, at the residence of a friend of Defendant Choi. (*Id.*) When Plaintiff met with Defendants, they presented her with a Confidential Settlement Agreement and General Release (the "Settlement Agreement"), in which Defendants agreed to pay Plaintiff $17,000.00 in return for her release of any claims Plaintiff might have against Defendants, including FLSA claims. (*Id.* ¶ 26; *see* Decl. of Sonali Setia in Supp. of Mot. to Dismiss ("Setia Decl.") (ECF No. 28) Ex. A.) Plaintiff was told she would have to sign the Settlement Agreement prior to receiving her severance payment. (Am. Compl. ¶ 27.) It was Plaintiff's understanding that she was being offered the severance payment because her position had been terminated, and she was never told that the severance payment was a payment of unpaid wages owed to her by Defendants. (*Id.* ¶ 28.)

Plaintiff signed the Settlement Agreement, stating that due to her recent termination, she "had little choice but to sign the necessary documents to receive her severance compensation." (*Id.* ¶ 27.) The Settlement Agreement was written in English. (*Id.* ¶ 29.) Plaintiff, who only speaks and understands Korean, did not have an interpreter present when she signed the

Settlement Agreement.  (*Id.*)  Plaintiff also did not have an attorney present when she signed the Settlement Agreement and never consulted with an attorney about her FLSA rights.  (*Id.*)

During her employment, Plaintiff worked approximately sixty and a half hours per week.  (*Id.* ¶ 12.)  Plaintiff was paid a flat daily rate of $55 from 2001 until 2015 and then $60 from 2015 until her termination.  (*Id.* ¶¶ 13–14.)  Plaintiff was never provided with overtime compensation or "spread of hours" compensation for shifts lasting longer than ten hours.  (*Id.* ¶¶ 15–16.)  Defendants did not provide Plaintiff with a wage notice at the time of her hiring.  (*Id.* ¶ 17.)  In fact, Defendants knowingly and willfully deprived their other employees of overtime and spread of hours compensation.  (*Id.* ¶¶ 31–32.)  Plaintiff initiated this case on December 4, 2017 on her own behalf and on behalf of all others similarly situated.  (*Id.* ¶ 1.)

## II.     Procedural Background

By motion filed on August 6, 2018, Defendants moved to dismiss Plaintiff's original Complaint, asserting that the parties had already resolved this dispute through a private settlement agreement entered into before the initiation of this case.  (ECF No. 14.)  On February 15, 2019, the Court granted Defendants' motion, finding that the Settlement Agreement was enforceable on its face and that no facts had been alleged to impugn the validity of the Settlement Agreement or to suggest that the Settlement Agreement was the result of one-sided bargaining.  (ECF No. 23.)  The Court's dismissal was without prejudice and with leave to replead.  (*Id.*)  On March 18, 2019, in accordance with the Court's directives, Plaintiff filed the Amended Complaint.  (ECF No. 24.)  This motion ensued.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A court also need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, such as the Settlement Agreement, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

## DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint, averring that the Settlement Agreement executed by the parties is valid and enforceable as it was knowingly and voluntarily entered into, and was not the product of duress, fraud, or undue influence. (Defs.' Mem. in Support of Mot. to Dismiss ("Defs. Mot.") (ECF No. 30) 5.) Plaintiff opposes dismissal, maintaining that the Settlement Agreement was fraudulently induced and should therefore be set aside and rendered invalid as a matter of law. (Pl.'s Mem. in Opp. to Defs.' Mot. ("Pl. Opp.") (ECF No. 28) 4.)

Releases are contracts under New York law, and releases are enforceable when the language of the release is clear and unambiguous. *Weiss, Peck & Greer, L.L.C. v. Robinson*, No. 03-CV-209(RWS), 2003 WL 1396436, at *4 (S.D.N.Y. Mar. 19, 2003); *Booth v. 3669 Delaware, Inc.*, 92 N.Y.2d 934, 935 (1998). Furthermore, releases are enforceable where they have been entered knowingly and voluntarily, and not as the result of fraud, duress, or undue influence. *See Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (citing *Skluth v. United Merch. & Mfr., Inc.*, 559 N.Y.S.2d 280, 282 (N.Y. App. Div. 1990)). To set aside a release, a party must demonstrate that the release does not apply to the claim at issue or that there is an equitable basis to vitiate its effect. *Id.*

Settlement agreements and releases entered into under Federal Rule of Civil Procedure 41[1] in FLSA cases require approval from a district court or the Department of Labor to take effect. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).[2] This extra protection is warranted because the FLSA was intended to "remedy the evil of overwork by

---

[1] Rule 41 applies to dismissal of actions pending before a court. Fed R. Civ. P. Rule 41.
[2] *Cheeks* is "confined to the Rule 41 context." *Barnhill v. Fred Stark Estate*, No. 15-CV-3360(BMC), 2015 WL 5680145, at *1 (E.D.N.Y. Sept. 24, 2015); *see Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 400 (S.D.N.Y. 2017).

ensuring workers were adequately compensated for long hours, as well as by applying financial pressure on employers to reduce overtime." *Id.* (internal quotation marks omitted) (quoting *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008)).  The purpose of the FLSA "was to secure for the lowest paid segment of the nation's workers a subsistence wage." *Id.* at 202 (quoting *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946)).

The Second Circuit has not yet ruled on whether settlement agreements for FLSA-related claims entered into *prior to* litigation require district court or Department of Labor approval. However, several district courts in this Circuit have addressed the issue.  In *Gaughan v. Rubenstein*, the parties executed a settlement agreement in which the plaintiff agreed to release any and all claims, including those related to employment, against the defendant.  261 F. Supp. 3d 390, 397 (S.D.N.Y. 2017).  The plaintiff later brought a complaint raising FLSA and NYLL claims against the defendant for the same conduct covered in the agreement.  *Id.*  After considering the circumstances surrounding the pre-litigation settlement, the court upheld the settlement agreement because there was "no reason to view that agreement as the product of one-sided bargaining." *Id.* at 402.  In coming to this conclusion, the court in *Gaughan* emphasized that (1) the plaintiff was represented by counsel in reaching the settlement agreement, (2) the plaintiff received significant compensation, (3) the plaintiff was made aware of her FLSA rights, as shown in her pre-settlement demand letters, and (4) the settlement was reached after months of negotiation.  *Id.*

Similarly, in *Gorczyca v. NVR, Inc.*, decided two days after *Gaughan*, the court upheld a release of the plaintiff's FLSA claims because at the time the plaintiff signed the release, "he did *not* occupy a position of unequal bargaining power relative to [the defendant.]"  No. 13-CV-6315L, 2017 WL 11435971, at *2 (W.D.N.Y. July 13, 2017).  Rather, the plaintiff was "fully

aware of the factual and legal grounds" for his FLSA claims and informed the defendant that he was represented by counsel at the time of negotiations. *Id. See also Matamoro v. Khomari*, No. 16-cv-9004 (KBF), 2017 WL 6542954, at *2-3 (S.D.N.Y. Dec. 19, 2017) (upholding pre-litigation release of FLSA claims where the plaintiff was represented by counsel and there was no reason to view the agreement as the product of one-sided bargaining).

Most recently, in *Tortomas v. Pall Corporation*, the court found that it lacked information at the motion to dismiss stage sufficient to determine whether the plaintiff's pre-litigation release of his FLSA claims was enforceable. No. 18-CV-5098 (JMA)(SIL), 2020 WL 2933669, at *4 (E.D.N.Y. May 31, 2020). The court observed that the plaintiff was a "well-compensated employee," represented by "able counsel," had ample time to consider the defendant's offer, and received substantial consideration in exchange for her release. *Id.* at *4-5. However, the parties had presented no evidence as to whether a *bona fide* dispute over the defendant's liability under the FLSA, i.e., the plaintiff's entitlement to overtime pay, existed when the release was entered into. *Id.* at *5. Accordingly, the court denied the defendant's motion to dismiss the plaintiff's FLSA claims, noting the possibility that the defendant could reassert the same argument with respect to the release at summary judgment if it could produce further evidence of a *bona fide* dispute. *Id.*

Based on the analysis in *Gaughan* and related cases in this Circuit, and in consideration of the employee-friendly purpose of the FLSA, as stated in its prior Order, this Court finds that settlement agreements for FLSA-related claims entered into prior to litigation should be analyzed on a case-by-case basis.

The Court notes that settlement agreements for NYLL-related claims entered into prior to litigation do not enjoy the FLSA's expressed prohibition of waiver and unsupervised settlements

7

and are generally enforceable. *See Tortomas*, 2020 WL 2933669, at *3-4; *Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008); *Simel v. JP Morgan Chase*, No. 05 CV 9750(GBD), 2007 WL 809689, at *4-5 (S.D.N.Y. March 19, 2007). Such agreements may be overcome only if a plaintiff can demonstrate that they do not apply to her NYLL claims or that there is an equitable basis to vitiate their effect. *See Tortomas*, 2020 WL 2933669, at *3-4.

Here, no party claims that the release contained in the Settlement Agreement is ambiguous or does not apply to Plaintiff's claims in this litigation. Rather, the Settlement Agreement unambiguously and explicitly releases Plaintiff's FLSA and NYLL claims arising from wage and hour violations. (*See* Setia Decl. Ex. A.) The only issues for the Court to address at this juncture are (1) Plaintiff's novel claim that the Settlement Agreement was obtained by fraud, and (2) if the Settlement Agreement was validly entered into, whether Plaintiff's release of her FLSA claims should nonetheless be set aside in light of the unfair circumstances surrounding the Settlement Agreement.

### a. Fraudulent Inducement

The Court turns first to Plaintiff's claim of fraudulent inducement. Under New York law, "to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)). Fraudulent inducement to enter into a contract, where "a promisor's successful attempts to induce a promisee to enter into a contractual relationship despite the fact that the promisor harbored an undisclosed intention not to perform," is one type of fraud recognized by New York

courts.  *Neckles Builders, Inc. v. Turner*, 986 N.Y.S.2d 494, 497 (App. Div. 2014).  The claim of fraud, however, must be "collateral to the contract." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) (citation omitted).

Importantly, while the rules of federal pleading typically require a "short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims have heightened pleading requirements.  *See* Fed. R. Civ. P. 9(b) (requiring parties to "state with particularity the circumstances constituting fraud or mistake.").  To meet Rule 9(b)'s pleading standard, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  "[A] plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016) (quoting *Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y. 2015)).  "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Here, Plaintiff fails to plead the alleged fraud with the particularity required by Rule 9(b) in the Amended Complaint.  Plaintiff alleges only that she "was told that she would have to sign the Settlement Agreement prior to receiving her severance payment" and that "[a]t all times, it was Plaintiff's understanding that the severance payment was offered because her position was terminated."  (Am. Compl. ¶¶ 27-28.)  These allegations fail to identify who made these statements, and when and where they were made.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383

9

F. Supp. 3d 135, 144 (S.D.N.Y. 2019) ("[Plaintiff's] failure to specify the speakers is problematic in itself.... Taken in conjunction with the failure to specify the location, method of communication, and precise time frame, [Plaintiff's] claim cannot satisfy Rule 9(b)."). With respect to the second allegation, it is not even clear on what basis Plaintiff understood that she was being paid only for her termination.

Even if Plaintiff had met Rule 9(b)'s pleading requirements, as she attempts to do in her opposition to the instant motion,[3] her fraudulent inducement theory would still fail. Assuming, without deciding, that the statements identified by Plaintiff constitute material misrepresentations knowingly made by Defendants, Plaintiff cannot establish that she reasonably relied on them. Indeed, federal courts in this district as well as New York state courts have found that where "the alleged misrepresentations conflict with the terms of the [agreement], there can be no reasonable reliance as a matter of law." *Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *4 (S.D.N.Y. Mar. 1, 2018) (internal quotation marks omitted); *see also Jackson v. Broad. Music, Inc.*, No. 06-CV-2283, 2007 WL 2914516, at *1 (2d Cir. Oct. 5, 2007) (summ. order) (affirming the district court's determination that a plaintiff "could not reasonably have relied on [an] alleged ... misrepresentation" where it contradicted "the clear language of the agreement at issue"); *Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 366 (S.D.N.Y. 2005) (rejecting a fraudulent inducement claim where the alleged misrepresentations "were plainly contradicted by the meaning of the written document

---

[3] Plaintiff adds multiple new factual details to her claims in her opposition. She states that Defendant Choi "made two materially false statements to Plaintiff concerning the Settlement [Agreement] to induce her to sign the document. Specifically, Choi knowingly misrepresented that the Settlement [Agreement] pertained only to Plaintiff's termination," and "explicitly told Plaintiff that she will not be able to receive the severance payment if she did not sign the Settlement [Agreement]." (Pl. Opp. 5.) These allegations are improperly brought in an opposition brief, as "it is axiomatic that [a] Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015).

that the claimant failed to read"); *Morby v. Di Siena Assocs. LPA*, 737 N.Y.S.2d 678, 680 (App. Div. 2002) ("Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance ... [T]he allegedly fraudulent misrepresentation ... could have been readily discovered upon the reading of the document, and plaintiff cannot now avoid his obligations under a release he did not read merely by asserting that he 'thought' it was something else." (internal citations omitted)).

Here, the Settlement Agreement clearly states that the severance payment offered to Plaintiff serves as consideration for Plaintiff's release of Defendants from liability from any wage-related claims.  (*See* Setia Decl. Ex. A.)  The Court understands Plaintiff's contention is that she was unable to read the Settlement Agreement because she does not speak or understand English.  However, this bare assertion, even coupled with Defendants' alleged misrepresentation with respect to the purpose of the severance payment, does not present a sufficient basis for voiding the Settlement Agreement on the basis of fraud.  *See Lozowsky v. Planet Automall, Inc.*, No. 07–CV–3684 (RLM), 2009 WL 1910726, at *5 (E.D.N.Y. June 29, 2009) (even accepting as true plaintiff's lack of fluency in English and defendant's having made a misrepresentation, plaintiff's own negligence in failing to review or have read and explained to him certain agreements prior to signing would preclude any relief based on fraudulent inducement); *Continental Airlines, Inc. v. Lelakis*, 943 F. Supp. 300, 307 (S.D.N.Y. 1996) ("[D]efendant's alleged inability to speak English does not obliterate the overarching requirement of a fraudulent inducement defense that his reliance on [plaintiff's] representations be justified and reasonable.") (citation omitted); *see also Maines Paper & Good Serv. Inc. v. Adel*, 681 N.Y.S.2d 390, 391 (App. Div. 1998) (finding that an individual could not have justifiably relied on oral misrepresentations where he failed to read, or have someone else read and explain, the agreement

that was otherwise unambiguous and clear); *Dunkin' Donuts of Am., Inc. v. Liberatore*, 526 N.Y.S.2d 141,143 (App. Div. 1988) ("It has been uniformly held that if the facts represented are not matters peculiarly within the representor's knowledge, and the other party has the means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the subject of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.").

Accordingly, the Court finds that, under the facts presented, the Settlement Agreement is a valid contract under New York law, and Plaintiff's release of her claims under the NYLL is enforceable. Plaintiff's state NYLL claims are dismissed.

### b. FLSA Waiver

However, the Court is unable to determine whether Plaintiff's release of her FLSA claims is enforceable.

As other courts in this Circuit have demonstrated, whether there is a sufficient basis to justify enforcement of a pre-litigation FLSA release is determined on a case-by-case basis. In performing this analysis, courts emphasize such factors as whether the employee had legal representation, whether the employee was fully apprised of her rights under the FLSA, whether the release agreement resolved a *bona fide* dispute as to the employee's entitlement to wages under the FLSA, whether the employee engaged in negotiations with her employer, whether the employee had time to consider her options, and whether the employee received a substantial monetary benefit in exchange for the release of her claims. *See Gaughan*, 261 F. Supp. 3d at 402; *Gorczyca*, 2017 WL 11435971, at *2; *Tortomas*, 2020 WL 2933669, at *4-5. Each of these factors is focused on one overarching question: was the release the result of a fair bargaining process?

Here, the Court is not satisfied that this question can be answered in the affirmative. Plaintiff alleges in the Amended Complaint that she entered into the Settlement Agreement mere days after she was terminated from a waitressing job she held for over a decade. (Am. Compl. ¶¶ 11, 25.) She was not represented by counsel and indicates that she was entirely unaware of her rights under the FLSA when she signed the Settlement Agreement. (*Id.* ¶¶ 28-30.) In fact, Plaintiff states that she was not told the payment she was being offered in exchange for her signing the Settlement Agreement was related to unpaid wages. (*Id.* ¶ 28.) There is no indication that a claim that Plaintiff was owed wages ever arose in the parties' discussions surrounding the Settlement Agreement. Rather, Plaintiff understood the payment to be a severance payment made due to her recent termination. (*Id.*) Plaintiff signed the Settlement Agreement because she believed it to be a prerequisite to receiving the severance payment, which she needed due to her recent termination. (*Id.* ¶¶ 27-28.)

More troublingly, Plaintiff apparently executed the Settlement Agreement without ever having read and understood it. Plaintiff does not speak English, the language in which the Settlement Agreement was written, and did not have the benefit of a translator at the time she signed. (*Id.* ¶ 29.)

In light of the foregoing, the Court is deeply concerned that the Settlement Agreement was the product of exploitation and one-sided bargaining, in contravention of the policies animating the FLSA — "namely, neutralizing the employer-employee discrepancy in bargaining power and preventing the ignorant waivers of FLSA rights." *Gaughan*, 261 F. Supp. 3d at 401; *see Lynn's Food Stores, Inc. v. United States By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350 (11th Cir. 1982) (settlement agreement releasing FLSA claims set aside where, *inter alia*, the employees had no idea they were owed

wages pursuant to the FLSA, employees never retained an attorney, and some of the employees who signed the agreement could not speak English). Accordingly, Plaintiff's FLSA claims survive at this stage of the proceedings.

The Court notes that, to the extent Defendants may be able to produce evidence that would rebut Plaintiff's characterization of the circumstances surrounding the Settlement Agreement and justify enforcement of Plaintiff's FLSA release, they are free to re-raise the issue on a motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims arising from alleged violations of the New York Labor Law are dismissed. Plaintiff's federal claims arising from alleged violations of the Fair Labor Standards Act survive. Defendants shall serve an answer to the Amended Complaint by October 16, 2020. The parties are then directed to confer and submit the attached proposed case management plan and scheduling order by November 20, 2020. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 27.

Dated: September 11, 2020　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

UNITED STATES DISTRICT COURT                                    Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x



                                                        **CIVIL CASE DISCOVERY PLAN**
                              Plaintiff(s),              **AND SCHEDULING ORDER**
        - against -



                              Defendant(s).        _____ CV _____ (NSR)

---------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders,

        non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
       _____

                                                                               _____

                                                                              Nelson S. Román, U.S. District Judge