UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
YOUNG MIN LEE,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/28/22

                       Plaintiff,

       -against-

NEW KANG SUH, INC. and MYUNG
SOOK CHOI,

                  Defendants.
------------------------------------------------------X
**PAUL E. DAVISON, U.S.M.J.**

**DECISION AND ORDER**

17 Civ. 9502 (PED)

## I. INTRODUCTION

Plaintiff Young Min Lee  commenced this action against defendants New Kang Suh, Inc. and Myung Sook Choi, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  This case is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636(c).  Dkt. #75.  A bench trial was conducted on June 28, 2022 and the Court reserved decision.[1]  Pursuant to the following findings of fact and conclusions of law, plaintiff is entitled to damages in the amount of **$53, 273.50**.

## II. FINDINGS OF FACT

The Court makes the following Findings of Fact pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure.  These Findings of Fact are drawn from the parties' pre-trial submissions, plaintiff's testimony at trial, the parties' trial exhibits and the Court's analysis of the

---

[1] Plaintiff testified at the trial; defendant Myung Sook Choi attended the trial but her counsel did not call her to testify.  Defense counsel cross-examined plaintiff but did not call any witnesses.

credibility and weight to which that evidence is entitled.[2]

Plaintiff Young Min Lee (a.k.a. Young Min Yuo), age sixty-one, worked in Yonkers, New York as a waitress for defendants from 2001 until her employment was terminated on June 15, 2017. Dkt. #84, ¶ 11; T. 8-9, 36.[3]  Plaintiff was born and raised in Korea and came to the United States in 1997.  T. 47.  She attended high school in Korea but did not graduate.  T. 47-48. Although her high school offered English studies, plaintiff did not study a lot.  T. 47.  Plaintiff spoke Korean while working for defendants; her spoken English was limited to taking orders from English-speaking customers.  T. 48.  Plaintiff testified at trial via a Korean interpreter.  T. 7. Defendants concede that plaintiff does not read English.  T. 55.

Corporate defendant New Kang Suh, Inc. operated a restaurant known as Korea Garden. T. 8.  Defendant Myung Sook Choi, manager at Korea Garden, hired plaintiff and was her boss. T. 8, 10-11.  Defendant Choi engaged in conversations with customers in English.  T. 38.  She could read and write English to the extent that she could handle normal, routine transactions at the restaurant.  T. 38-39.

Plaintiff worked five days per week at Korea Garden: she usually had Tuesday/Wednesday or Tuesday/Thursday off.  T. 12.  The restaurant closed one day each year, on January 1st.  T. 14.  Plaintiff began work each day at 10:30 a.m.  T. 12.  According to plaintiff, on Fridays and Saturdays, she worked until 11:00 p.m. if customers were still at the restaurant; if there were no customers, plaintiff went home at 10:30 p.m.  T. 13.  Plaintiff did not testify as to

---

[2]  To the extent that any Finding of Fact reflects a legal conclusion, it shall to that extent be deemed a Conclusion of Law, and vice-versa.

[3]  Citations to "T. ___" refer to pages from the Trial Transcript.

how often customers stayed at the restaurant until 11:00 p.m.  Absent such evidence, I cannot determine, without speculation, how often plaintiff stayed until 11:00 p.m. on Fridays and Saturdays.  Accordingly, I find that plaintiff worked until 10:30 p.m. on Fridays and Saturdays. Plaintiff worked until 10:00 p.m. on her other days.  T. 13.  She was allowed thirty minutes each day for lunch, but usually finished in "[a]round 20 minutes."  T. 14.  Additionally, if a customer came in while plaintiff was having lunch, she would "have to get up."  T. 15.[4]  Based upon this evidence, I conclude that plaintiff routinely worked a total of 58.5 hours each week, calculated as follows:

| | | |
|---|---|---|
| Mon, Wed/Th and Sun | (11.5 hours) x (3 days) = 34.5 hours | |
| Fri and Sat | (12.0 hours) x (2 days) = 24.0 hours | |
| | (34.5 hours) + (24.0 hours) = 58.5 hours each week | |

*   *   *

In 2014 and 2015, plaintiff was paid $55 per day; in 2016 and 2017, plaintiff was paid $60 per day.  T. 15-17.[5]  She was paid weekly, by check.  T. 17.  Although plaintiff received tips,

---

[4]  The calculation of hours worked each week includes the 20 minutes–at most–plaintiff took for lunch.  Under the FLSA, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks."  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp.3d 481, 499 (S.D.N.Y. 2017) (quotation marks and citations omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).  "To qualify as a bona fide meal period, the employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily 30 minutes or more is long enough for a bona fide meal period."  *Id.* (quotation marks and citations omitted).  "Conversely, an 'employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.'"  *Id.* (quoting 29 C.F.R. § 785.19(a)).  "Moreover, '[r]est periods of short duration, running from 5 minutes to about 20 minutes . . . are customarily paid for as working time.'"  *Id.* (quoting 29 C.F.R. § 785.18).

[5]  Plaintiff's testimony concerning her rate of pay was somewhat vague and contradictory. She initially testified that she thought she was paid $60 per day in 2015, 2016 and 2017, and also stated: "It was only for one year that I got $60."  T. 15-16.  Plaintiff's counsel sought clarification.

defendants concede that they did not keep accurate records of tips received and, therefore, compensation for any minimum wage violation should be calculated based upon the national minimum wage. T. 6.

On the day plaintiff's employment was terminated, plaintiff asked defendant Choi for statements reflecting all the hours plaintiff had worked for defendants. T. 21. In response, plaintiff received "a few pages" that looked like "a paper that was used by accountants." T. 26-27.[6] According to plaintiff:

> So after I left that place, I thought a lot about it, and I was working there for more than ten years. And I didn't even get a bonus one time, and compared to other restaurants – other restaurants were getting $70, but the highest I got from this restaurant was 60. So after I left, I was so upset from the unfairness, and I was asking for the compensation and retirement compensation.

T. 29. Therefore, plaintiff called defendant Choi and asked her for $30,000 "as a severance pay." T. 29. Defendant Choi initially responded that she had no money and had been borrowing money to use. T. 29. A few days later, plaintiff was told the money was ready and was instructed to come and pick it up at a house in New Jersey that belonged to defendant Choi's friend, Mrs.

---

T. 17 ("She mentioned she were [sic] paid $60 per day for just one year, but it doesn't make sense from 2015 to 2017."). Plaintiff responded: "I don't really remember clearly, but the time period when I got paid for [sic] $60 was not more than *three years*. About *one year* is what I remember that I got paid $60 a day." T. 17 (emphasis added). In response to counsel's follow-up question, plaintiff stated it was "fair to say" that she was paid $60 per day from 2016 to 2017 for one year. My findings as to plaintiff's rates of pay throughout the relevant time period reflect the extent to which I credit plaintiff's testimony.

[6] The record contains a few time sheets allegedly reflecting hours plaintiff worked during two weeks in 2014 and five weeks in 2017. Pl. Exhs. A, B. Plaintiff did not receive these documents from defendant Choi; rather, defendants produced them during discovery. T. 27. Moreover, plaintiff testified that she signed the time sheets from 2014 (Pl. Exh. A) but the signature on the time sheets from 2017 (Pl. Exh. B) was not hers and did not match her handwriting. T. 21-25.

Cornell. T. 29-31. Plaintiff knew Mrs. Cornell only as a customer in the restaurant. T. 31.

Plaintiff took a taxi to the house. T. 30. Plaintiff entered the house and, after waiting a little bit,

she sat down with defendant Choi and Mrs. Cornell. T. 30, 40. Defendant Choi did not say

anything at all; Mrs. Cornell, who spoke Korean, talked to plaintiff. T. 32, 39. According to

plaintiff, Mrs. Cornell stated:

> that she looked around to get money, and she got money. But she was only able to
> get this much money is what she said, $7,000 in cash and $10,000 in a check. She
> said that she prepared that much. She said just take this even if it's this much.
> She said to take it.

T. 30. Plaintiff was presented with a four-page, single-spaced, typewritten document entitled

Confidential Settlement Agreement and General Release (the "Settlement Agreement"), which

states (in English) that defendants agreed to pay plaintiff $17,000 in return for her release of any

claims plaintiff may have against defendants, including FLSA claims. Def. Exh. A.; T. 30. Mrs.

Cornell did not explain the terms of the Settlement Agreement. T. 32. Neither defendant Choi

nor Mrs. Cornell said anything to plaintiff about the wage and labor law. T. 46-47. Plaintiff did

not ask Mrs. Cornell any questions about the Settlement Agreement. T. 39. Plaintiff signed the

document because Mrs. Cornell told plaintiff: "if you want to take this money, you have to sign

this." T. 28, 30. Plaintiff understood the money to be severance pay. T. 31. Plaintiff believed

she was entitled to severance pay because she had worked for defendants for fifteen years and

had been unfairly terminated. T. 35. Plaintiff thought that Asian restaurants usually paid

severance pay to long-term employees like herself, although she was "not sure how it works

legally." T. 42.

Plaintiff called a taxi and left.  T. 30-31.[7]  She had spent a total of about thirty minutes inside Mrs. Cornell's house.  T. 32-33.  Plaintiff was satisfied with the Settlement Agreement until she learned that defendant Choi had violated paragraph nine of the agreement (a mutual non-disparagement clause).  T. 41-42; *see* Def. Exh. A, ¶ 9.  Defendants concede that the Settlement Agreement was prepared by a third party and that neither party understood its terms. T. 55.[8]

## III.  PROCEDURAL BACKGROUND

Plaintiff filed her initial Complaint on December 4, 2017.  Dkt. #1.  By Opinion and Order dated February 19, 2019, Judge Román granted defendants' motion to dismiss and provided plaintiff leave to amend her claims.  Dkt. #23; *see* 2019 WL 689085.  On March 18, 2019, plaintiff filed an Amended Complaint.  Dkt. #24.  By Opinion and Order entered September 11, 2020, Judge Román granted defendants' motion to dismiss in part, and dismissed plaintiff's NYLL claims on the ground that "the Settlement Agreement is a valid contract under New York law, and Plaintiff's release of her claims under the NYLL is enforceable."  Dkt. #36, at 12; *Lee v. New Kang Suh Inc.*, No. 17 Civ. 9502, 2020 WL 5504309, at *6 (S.D.N.Y. Sept. 11, 2020).  On the other hand, Judge Román denied defendants' motion to dismiss plaintiff's FLSA claims because "the Court [was] unable to determine whether Plaintiff's release of her FLSA

---

[7]  Plaintiff received $7,000 in cash and ten checks for $1,000.  T. 31.  Plaintiff was told it would be okay to deposit two of the checks each month, but her bank said she could not do that. T. 31.  Plaintiff returned the ten checks (presumably to Mrs. Cornell) and received five checks for $2,000.  T. 31.

[8]  The provenance of the Settlement Agreement is unclear.  According to defense counsel, Mrs. Cornell "apparently had [the] document created."  T. 54.

claims is enforceable." *Id.* Specifically, Judge Román reasoned: (1) pursuant to *Cheeks v.*

*Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), settlement agreements and releases

entered into under Rule 41 of the Federal Rules of Civil Procedure in FLSA cases must be

approved by a district court or the Department of Labor; (2) the Second Circuit has not yet ruled

on whether pre-litigation settlement agreements for FLSA-related claims require district court or

Department of Labor approval; but (3) several district courts in this Circuit have addressed the

issue;[9] and (4) based upon the analysis in those cases, "and in consideration of the employee-

friendly purpose of the FLSA, . . . this Court finds that settlement agreements for FLSA-related

claims entered into prior to litigation should be analyzed on a case-by-case basis." Dkt. #36, at

5-7; 2020 WL 5504309, at *2-3. Accordingly, Judge Román noted that, in light of the

allegations in the Amended Complaint, the Court was "deeply concerned that the Settlement

Agreement was the product of exploitation and one-sided bargaining, in contravention of the

policies animating the FLSA – namely, neutralizing the employer-employee discrepancy in

bargaining power and preventing the ignorant waivers of FLSA rights." Dkt. #36, at 13 (internal

quotation marks and citations omitted); 2020 WL 5504309, at *6. Judge Román also noted that

defendants could re-raise the issue on a motion for summary judgment, "to the extent Defendants

may be able to produce evidence that would rebut Plaintiff's characterization of the

circumstances surrounding the Settlement Agreement and justify enforcement of Plaintiff's

FLSA release." Dkt. #36, at 14; 2020 WL 5504309, at *7.

On April 16, 2021, Judge Román referred this case to me for general pretrial supervision.

---

[9] Judge Román summarized three relevant district court cases in his Opinion and Order, familiarity with which is presumed.

Dkt. #52.  On October 18, 2021, I determined that discovery was complete and closed my reference for administrative purposes.  *See* Dkt. 10/18/2021 Minute Entry.  On November 19, 2021, during a conference before Judge Román, the parties stated that they would forego summary judgment motions and were ready to proceed to trial.  *See* Dkt. 11/19/2021 Minute Entry.  On January 28, 2022, the parties Consented to my jurisdiction for all purposes.  Dkt. #75. The bench trial was originally scheduled for April 25, 2022 (Dkt. #77) and was adjourned at defense counsel's request (with consent of plaintiff's counsel) to June 28, 2022.  Dkt. #78-80.

## IV.  CONCLUSIONS OF LAW

Plaintiff alleges that defendants violated the FLSA by failing to pay plaintiff minimum wage and overtime.  Dkt. #84, at 8 (ECF pagination).  Defendants assert that plaintiff's claims should be dismissed because plaintiff "willingly and knowingly entered into a private settlement agreement releasing the Defendants of the very claims raised in the instant complaint."  Dkt. #81, at 3-4.

A.  The Settlement Agreement is Unenforceable

The threshold issue is whether plaintiff's release of her FLSA claims is enforceable.  I conclude, based upon the evidence at trial, that plaintiff's release of her FLSA claims should be set aside in light of the circumstances surrounding her execution of the Settlement Agreement. Plaintiff believed she was entitled to severance pay because she had worked for defendants for fifteen years and had been unfairly terminated.  She thought that Asian restaurants usually paid severance pay to long-term employees like herself.  Plaintiff asked defendant Choi for $30.000 in severance pay.  A few days later, plaintiff was told to come and pick up the money at a house in

New Jersey that belonged to defendant Choi's friend, Mrs. Cornell. Plaintiff took a taxi to the

house. Mrs. Cornell, who spoke Korean, told plaintiff that $17,000 was all she had and plaintiff

should take it. Plaintiff was presented with the Settlement Agreement, which was written in

English; plaintiff did not read English. Neither Mrs. Cornell nor defendant Choi explained the

Settlement Agreement or stated anything about wage and labor law. Plaintiff signed the

Settlement Agreement because Mrs. Cornell told her she had to sign it in order to take the

money. Plaintiff understood the money to be severance pay.

      In short, defendants failed "to produce evidence that would rebut Plaintiff's

characterization of the circumstances surrounding the Settlement Agreement and justify

enforcement of Plaintiff's FLSA release[.]" Dkt. #36, at 14; 2020 WL 5504309, at *7.

Plaintiff's testimony – which for the most part stands uncontradicted – clearly shows that the

Settlement Agreement was not the product of a "fair bargaining process." Dkt. #36, at 12; 2020

WL 5504309, at *6. Neither party was represented by counsel. The Settlement Agreement was

prepared by a third party; neither party understood its terms. There is no evidence that plaintiff

understood her FLSA rights or that she was waiving those rights by signing the Settlement

Agreement. There is no indication that the $17,000 figure was tethered to any calculation of

wages owed to plaintiff. Finally, plaintiff was not afforded time to consider the situation;

instead, she was confronted with a typewritten *fait accompli*, in a foreign language, and was

bluntly told to sign the Settlement Agreement if she wanted the money. At bottom, plaintiff

demonstrated that the Settlement Agreement was, indeed, "the product of exploitation and one-

sided bargaining, in contravention of the policies animating the FLSA." *See* Dkt. #36, at 13.

Accordingly, I conclude that plaintiff's purported pre-litigation release of her FLSA claims is not

enforceable.

B. Burden of Proof

Plaintiff bears the burden of proving that defendants violated the FLSA by failing to properly compensate her for her work. *See Adonias v. Al Horno Lean Mexican Kitchen Inc.*, No. 16 Civ. 7266, 2018 WL 4007643, at *7 (S.D.N.Y. Aug. 22, 2018). Under the FLSA, "[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only . . . submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Gonzalez v. Masters Health Food Serv. Inc.*, 14 Civ. 7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quotation marks and citation omitted). "This burden is not high and may be met through estimates based on [plaintiff's] own recollection." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp.3d 481, 497 (S.D.N.Y. 2017) (quotation marks and citations omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018). If plaintiff makes this showing, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed." *Adonias*, 2018 WL 4007643, at *7 (quotation marks and citation omitted). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Gamero*, 272 F. Supp.3d at 498 (quotation marks and citations omitted).

C. Defendants are "Employers" Under the FLSA

The FLSA provides overtime and minimum wage protections to employees who are either (1) "employed by an enterprise engaged in commerce or in the production of goods for commerce," or (2) "engaged in commerce or in the production of goods for commerce." See 29 U.S.C. §§ 206(a), 207(a)(1). Plaintiff alleges that the FLSA provisions apply to her because

Korea Garden was, at all relevant times, "an enterprise engaged in commerce within the meaning of the FLSA." Dkt. #12 (Amended Complaint), ¶ 11. The FLSA defines an "enterprise engaged in commerce" as one that

> (I) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. § 203(s)(1)(A). Here, plaintiff proffered tax returns (Pl. Exh. C) demonstrating that Korea Garden grossed $500,000.00 or more during each of the years for which plaintiff seeks FLSA relief (2014-2017). Thus, plaintiff established that she is "covered" by the FLSA.

As to defendant Choi, the FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concept." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quotation marks and citation omitted). Further, "[t]he economic realities test focuses on whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Lin v. DJ's Int'l Buffet, Inc.*, No. 17 Civ. 4994, 2022 WL 1004189, at *4 (E.D.N.Y. Mar. 31, 2022) (quoting *Irizarry*, 722 F.3d at 104-05) (internal quotation marks omitted). Here, the evidence demonstrates; (1) defendant New Kang Suh operated Korea Garden; (2) defendant Choi was Korea Garden's manager; and (3) defendant Choi hired plaintiff and was her boss.

Accordingly, New Kang Suh and Myung Sook Choi were plaintiff's "employers" under the FLSA.

D.  Plaintiff was Paid Below the Minimum Wage

The FLSA requires employers to pay their employees a legally mandated minimum wage, which, during the time at issue in this case, was set at $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Although plaintiff received tips, defendants concede that they did not keep accurate records of tips received and, therefore, compensation for any minimum wage violation should be calculated based upon the national minimum wage.  T. 6.  Based upon plaintiff's testimony at trial (which defendants did not rebut), she was paid between $4.70 per hour and $5.13 per hour.[10] Accordingly, I conclude that plaintiff was paid below the federal minimum wage at all relevant times.

E.  Plaintiff is Entitled to Unpaid Overtime

Under the FLSA, "employers are required to pay employees at least one-and-a-half times the regular rate at which they are employed for any workweek longer than forty hours." *Bozdogan v. 23 Ludlam Fuel, Inc.*, No. 16 Civ.1053, 2022 WL 4273851, at *8 (E.D.N.Y. Sept. 15, 2022).  Here, based upon plaintiff's testimony, she routinely worked 58.5 hours per week and was not appropriately compensated for her work beyond 40 hours per week.  Defendants failed to proffer evidence to the contrary.  Accordingly, I conclude that plaintiff is entitled to unpaid overtime compensation.

---

[10]  In 2014 and 2015, plaintiff was paid $55 per day; in 2016 and 2017, plaintiff was paid $60 per day.  Thus: (1) plaintiff was paid $275/week in 2014 and 2015, which equates to $4.70/hour ($275 divided by 58.5 hours); and (2) plaintiff was paid $300/week in 2016 and 2017, which equates to $5.13/hour ($300 divided by 58.5 hours).

F. Statute of Limitations

"The statute of limitations for an FLSA claim is two years, unless the violation is 'willful,' in which case it is three years." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citing 29 U.S.C. § 255(a)). To prove a willful violation, plaintiff must establish that defendants "either knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by" the FLSA. *Id.* (quotation marks and citations omitted). Plaintiff may satisfy this burden by demonstrating that defendants "knew or had reason to know that [they were] or might have been subject to the FLSA." *Khurana v. JMP USA, Inc.*, No. 14 Civ. 4448, 2017 WL 1251102, at *13 (E.D.N.Y. Apr. 5, 2017) (quotation marks and citations omitted). *See* 5 C.F.R. § 551.104 ("Reckless disregard of the requirements of the Act means failure to make adequate inquiry into whether conduct is in compliance with the Act."). Throughout this litigation, defendants maintained that plaintiff released her minimum wage and overtime claims by signing the Settlement Agreement. Defendants' argument clearly illuminates their awareness that they were, or might have been, subject to the FLSA. Accordingly, application of the three-year statute of limitations is warranted.

G. Calculation of Compensatory Damages

Defendants terminated plaintiff's employment on June 15, 2017. Plaintiff filed her initial Complaint on December 4, 2017. Dkt. #1. Thus, plaintiff is entitled to compensation for unpaid minimum wage and overtime from December 4, 2014 to June 15, 2017 (approximately 132 weeks).

From December 4, 2014 through December 31, 2015 (56 weeks), plaintiff was paid $55/day ($275/week). From January 1, 2016 through June 15, 2017 (76 weeks), she was paid

$60/day ($300/week).  Thus, during the relevant time frame, defendants paid plaintiff a total of $38,200.00, calculated as follows:

56 weeks @ $275/week = $15,400

76 weeks @ $300/week = $22,800

TOTAL PAID = $38,200

\*   \*   \*

However, during that same period, defendants were obligated under the FLSA to pay plaintiff $64,836.75, calculated as follows:

STRAIGHT TIME

(132 weeks) x (40 hours/week) = 5,280 hours

(5,280 hours) x ($7.25/hour) = $38,280

OVERTIME

Hourly OT rate: ($7.25) x 1.5 = $10.875/hour

(132 weeks) x (18.5 hours/week) = 2,442 hours

(2,442 hours) x ($10.875/hour) = $26,556.75

TOTAL EARNED

($38,280.00 straight time ) + ($26,556.75 overtime) = $64,836.75.

\*   \*   \*

-14-

Accordingly, plaintiff is entitled to an award of compensatory damages for unpaid minimum wage and overtime in the amount of **$26,636.75** ($64,836.75 - $38,200.00).

## H. Liquidated Damages

Plaintiff also seeks an award of liquidated damages. Dkt. #84, at 7. Under the FLSA, plaintiff may recover liquidated damages in an amount equal to her unpaid wages unless defendants establish a good faith basis for their failure to comply with wage and hour laws. *See Bozdogan*, 2022 WL 4273851, at *9. Here, as discussed above, defendants' FLSA violations were willful; thus, defendants cannot demonstrate a good faith basis for their underpayment of wages to plaintiff. Accordingly, plaintiff is entitled to recover liquidated damages in the amount of **$26,636.75**.

## I. Attorney's Fees and Costs

"In addition to providing for liquidated damages, the FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs." *Holick v. Cellular Sales of New York, LLC*, No. 21-948-CV, 2022 WL 4088001, at *3 (2d Cir. Sept. 7, 2022) (quotation marks and citation omitted). If plaintiff intends to seek attorney's fees, she must file a motion by October 28, 2022. Defendants' response shall be filed by November 18, 2022. Plaintiff's reply shall be filed by November 30, 2022.

## V. CONCLUSION

For the foregoing reasons, the Court finds in favor of plaintiff against defendants New Kang Suh, Inc. and Myung Sook Choi on plaintiff's FLSA claims for unpaid minimum wage and overtime. Plaintiff is awarded damages in the amount of $53,273.50, calculated as follows: (1)

$26,636.75 in compensatory damages for unpaid wages; and (2) $26,636.75 in liquidated

damages.


The Clerk of the Court is respectfully directed to enter judgment accordingly.


Dated: September 28, 2022
           White Plains, New York

**SO ORDERED**

PAUL E. DAVISON, U.S.M.J.

-16-